IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

Case No. 12-cv-2789 MJD-JSM

In the matter of the Trusteeship Created by LNR CDO IV, Ltd, and LNR CDO IV CORPORATION, Relating to the Issuance of Notes in the Original Aggregate Principal Amount of $1,279,038,000.

**AMENDED PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF TRUST PURSUANT TO MINN. STAT. § 501B.16**

1.  Petitioner U.S. Bank National Association files this amended petition (the "Amended Petition") in its capacity as successor trustee (solely in that capacity, the "Trustee") under the terms of that certain Indenture dated as of March 2, 2006 (as amended and restated, the "Indenture")[1] by and among: LNR CDO IV, Ltd., as Issuer; and LNR CDO IV Corporation, as Co-Issuer (together, the Issuer and Co-Issuer are the "Co-Issuers") and U.S. Bank National Association (successor in interest to Bank of America, National Association (successor by merger to LaSalle Bank National Association), as Trustee relating to the issuance of certain collateralized debt obligations described below. (A true and correct copy of the Indenture is attached hereto as **Exhibit 1** to the original Petition.) This Amended Petition amends and restates the Petition originally filed by the Trustee on October 9, 2012, in Minnesota District Court for the Second Judicial District ("Minnesota State Court") with respect to the Indenture.

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings assigned to such terms in the Indenture.

## JURISDICTION, VENUE AND PROCEDURAL STATUS.

2. The Trustee is a national banking association and its corporate trust headquarters are located in St. Paul, Minnesota.

3. The Minnesota State Court has jurisdiction over the Petition, as amended by this Amended Petition, for trust instruction pursuant to Minn. Stats. § 501B.16(4) and § 501B.24 because the assets of this trust are administered, in part, by and through the headquarters of the Trustee's corporate trust office located in Ramsey County, Minnesota.

4. This matter is properly venued in Minnesota State Court, Second Judicial District, Ramsey County pursuant to Minn. Stat. § 501B.17(2)(i).

5. On or about November 1, 2012, Party-in-Interest Morgan Stanley & Co. LLC ("Morgan Stanley"), in its representative capacity for certain senior Noteholders, removed the original Petition to the United States District Court for the District of Minnesota. Morgan Stanley subsequently moved to transfer venue of this matter to the United States District Court for the Southern District of New York on or about November 11, 2012.

6. On or about November 21, 2012, Parties-in-Interest LNR CDO IV, LLC (f/k/a LNR CDO IV Corporation), LNR Partners, LLC (f/k/a LNR Partners, Inc.), LNR Securities Holdings, LLC, LNR Securities Preferred, LLC, and Diesel Ltd. (collectively "the LNR Parties") representing the co-issuer and certain lower-tier holders of Notes,

moved this Court to remand this matter back to the Minnesota State Court. The Trustee joined in the LNR Parties' motion to remand.[2]

7. On January 18, 2013, the Court heard oral argument on the motion to transfer and the motion to remand, and took both motions under advisement.

8. As of the date of filing this Amended Petition, no party has answered.

**RELIEF REQUESTED UNDER MINNESOTA STATUTE § 501B.16, *ET SEQ.***

9. Pursuant to the terms of the Indenture, the Issuer, a limited liability company organized under the laws of the Cayman Islands, and the Co-Issuer, a corporation organized under the laws of the State of Delaware, issued non-recourse notes in the original aggregate principal amount of $1,279,038,000 (the "Notes").[3] The Notes are secured by a pool of commercial mortgage-backed securities and other assets (collectively, the "Collateral").

10. The Notes were issued in several classes having different terms, including different rates of interest and priorities in right of payment, as set forth in the Indenture. Specifically, the Indenture established the following classes of Notes: Class A, Classes B-FL and B-FX, Classes C-FL and C-FX, Classes D-FL and D-FX, Class E, Classes F-FL

---

[2] The filing and serving of this Amended Petition does not moot, waive or otherwise impact the pending Motion to Remand as that motion is premised on lack of subject matter jurisdiction. *See Franklin v. Pinnacle Entertainment, Inc.* 2012 U. S. Dist. LEXIS 52948; 2012 WL 1280272, *6 (E. D. MO. April 16, 2012). Nothing in this Amended Petition is intended to affect the issues currently under advisement by the Court.

[3] The Co-Issuers also issued Preferred Shares in the initial notational amount of $322,262,783.00.

and F-FX, Class G, Class H, Class J, and Class K[4]. The Indenture provides two separate "waterfalls" for the payment of principal and interest for each class of Notes from the proceeds of the Collateral giving effect to different priorities of payment, and the Trustee seeks instructions in this Amended Petition with respect to which distribution waterfall should apply with respect to funds currently held by the Trustee and funds to be collected in the future.

11. Section 11.1 of the Indenture sets forth the normal priorities of distribution for funds in the Payment Account on each Payment Date (the "Non-Accelerated Priority of Payments"). With respect to Interest Proceeds, Section 11.1(b) provides that on each Payment Date, after payment of various expenses (including but not limited to taxes, the fees of the Trustee, Administrative Expenses, and payments due under the Hedge Agreements, if applicable), the Interest Proceeds are first to be applied to pay the Interest and Default Interest due upon the Class A Notes. If (and only if) there are sufficient funds, the remaining Interest Proceeds are next applied ratably to pay any Interest and Default Interest due upon the Class B-FL and Class B-FX Notes. Classes of Notes ranked lower than Class B are only entitled to receive Interest Proceeds on any Payment Date if there were sufficient funds to do so.

12. The Non-Accelerated Priority of Payments provides for the Trustee to pay all principal due and owing on higher priority Notes before any principal is to be paid on

---

[4] Each Class of Notes is senior in right of payment to any class of notes with a later alphabetical designation; Notes within an alphabetically designated Class rank equally (for example, Class B-FX and B-FL rank equally).

4

lower priority Notes, but interest payments to lower priority Notes are not subordinated to the payment of the principal due and owing upon higher priority Notes.

13. The Non-Accelerated Priority of Payments under Section 11.1 can under certain circumstances be overridden by the payment priority provisions in Section 13.1 (the "Accelerated Priority of Payments"). Section 13.1(a) provides:

> (a) Anything in this Indenture or the Notes to the contrary notwithstanding, the Co-Issuers and the Holders of the Class B Notes agree for the benefit of the Holders of the Class A Notes that the rights of the Holders of the Class B Notes to payment by the Co-Issuers and in and to the Collateral, including to any payment from the Proceeds of Collateral, shall be subordinate and junior to the Class A Notes, to the extent and in the manner set forth in this Indenture including as set forth in Section 11.1 and hereinafter provided. If any Event of Default has occurred and has not been cured or waived **and acceleration occurs in accordance with Article V**, ..., the Class A Notes shall be paid in full in Cash before any further payment or distribution is made on account of the Class B Notes.... (Emphasis supplied).

14. A key difference between the Non-Accelerated Priority of Payments and the Accelerated Priority of Payments is that lower priority Notes may receive their ratable share of the Interest Proceeds under the former but not the latter. The language in Section 13.1(a) is repeated in Section 13.1(b)-(i) to provide for the subordination of each tranche of Notes and interests according to their rank, subject to the same condition, i.e., acceleration in accordance with Article V.

15. Here, the Trustee filed the Petition and this Amended Petition because it is confronted with a dispute between a substantial Holder of Class A Notes on one hand an and the Co-Issuer and Holders of certain lower class Notes on the other hand about

5

whether the Non-Accelerated Priority of Payments or the Accelerated Priority of Payments should apply. Central to the dispute is the meaning of the words "..and acceleration has occurred in accordance with Article V..." in Section 13.1

16.     Under Section 5.2(a) of the Indenture following an Event of Default, either the Trustee or the Controlling Party may declare an acceleration of the indebtedness evidenced by the Notes. Here, based upon an earlier Event of Default, as of September 5, 2012, the Holders of Class A Notes in excess of 66.67% of the outstanding principal amount thereof, the amount necessary to constitute themselves as the Controlling Party, had delivered various notices to the Trustee and certain other parties to the Indenture either declaring the indebtedness evidenced by the Notes to be due and payable in accordance with Section 5.2 (a) of the Indenture or instructing the Trustee to do so. On September 12, 2012, based upon the Controlling Party notices, the Trustee sent a notice to the Issuer and Co-Issuer and others indicating that the indebtedness evidenced by the Notes had been declared accelerated by the Controlling Party as of September 5, 2012. Subsequently on October 9, 2012, the Trustee filed the original Petition indicating that the indebtedness evidenced by the Notes had been accelerated by the Controlling Party.

17.     Whether or not an acceleration has been declared by the Controlling Party or the Trustee under Section 5.2(a) of the Indenture, Section 5.2(b) requires the Trustee to rescind and annul any declaration of acceleration and its consequences in circumstances when it is required to "preserve the Collateral" under Section 5.5 of the Indenture. The relevant portion of Section 5.2(b) of the Indenture provides:

> At any time after such a declaration of acceleration of Maturity has been made and before a judgment or decree for payment of the money due has been obtained by the Trustee as hereinafter provided in this Article V, the Trustee **shall rescind and annul such declaration and its consequences** if the Trustee is required to preserve the Collateral in accordance with the provisions of Section 5.5 with respect to the Event of Default that gave rise to such declaration; *provided, however,* that if such preservation of the Collateral is rescinded pursuant to Section 5.05, the Notes may be accelerated pursuant to the first paragraph of this Section 5.02, notwithstanding any previous rescission and annulment of a declaration of acceleration pursuant to this paragraph. (Emphasis supplied)

18. The Trustee has reviewed the provisions of Section 5.2(b) with respect to the above described September 2012 declaration of acceleration and has concluded that the conditions have been met requiring it to rescind and annul the September 2012 declaration of acceleration and its consequences assuming that a declaration of acceleration otherwise occurred.

19. Morgan Stanley, which is a member of the Controlling Party, has informed the Trustee of its view that the Acceleration Priority of Payments should apply to all future distributions (including the Withheld Distributions described below) because an effective acceleration of the indebtedness evidence by the Notes has occurred and any rescission and annulment thereof under Section 5.2(b) of it by the Trustee should not affect the application of priorities of payment set forth in Section 13.1. Specifically, it asserts that a Section 5.2(b) rescission and annulment of a declaration of acceleration should have no effect on Section 13.1.

20.   The LNR Parties and other Holders of subordinated Notes have separately informed the Trustee of their position that the Trustee is required to rescind and annul the September 2012 declaration of acceleration with the consequence that the non-Accelerated Priority of Payments would continue to apply.

21.   The Trustee believe that it is constrained by the literal text of the Indenture not to make distributions based upon the Accelerated Priority of Payments, but seeks confirming judicial instructions herein in light of uncertainty about whether the condition in Section 13.1 has been satisfied. Since the original Petition was filed parties advocating each competing position have filed appearances and the Trustee anticipates that they will vigorously contest the relevant legal and factual issues in this proceeding.

22.   Since October 2012, the Trustee, in response to this dispute, has withheld from distribution all amounts that would be paid to different Noteholder classes depending upon which distribution waterfall is applied (the "Withheld Distributions") and the Trustee seeks instructions with respect to the distribution of such amounts.

23.   Section 5.13 of the Indenture permits the Controlling Party to direct the Trustee with respect to the exercise of its powers under the Indenture, subject to certain limitations including the indemnification of the Trustee. The Trustee has received no direction or offer of indemnity with respect to the application of the Non-Accelerated Priority of Payment or Accelerated Priority of Payment that is the subject matter of this Amended Petition or with respect to any other action.

24.   Based upon the foregoing, in this Amended Petition the Trustee seeks an order from this Court (i) ratifying and confirming its determination that the condition

requiring it to apply the Accelerated Priority of Payments to the Withheld Distributions and future distributions under the Indenture has not occurred within the meaning of the Indenture. In the alternative, if the Court concludes that the condition requiring it to apply the Accelerated Priority of Payments has occurred, the Trustee seeks an order instructing it to apply that provision to the Withheld Distributions and future distributions under the Indenture.

25. Nothing herein shall be construed as an assumption by the Trustee of duties exceeding those proscribed under the Indenture or the waiver of any rights thereunder.

26. The Trustee expressly reserves the right to withdraw this Amended Petition and to alter its current position with respect to the distributions that are the subject of this Amended Petition or any other relief sought hereunder based upon information or legal advice obtained or other relevant developments occurring after the date hereof.

**WHEREFORE**, pursuant to the provisions of Minn. Stat. § 501B.16 and all other applicable law, Petitioner U.S. Bank National Association, as Trustee, respectfully requests that this Court and/or the Minnesota State Court:

a. Based upon the evidence and arguments of the parties in interest presented in proceedings upon this matter at the time and place designated by the Court, enter an order: ratifying and confirming the Trustee's determination that it should apply the Non-Accelerated Priority of Payments to the Withheld Distributions and future distributions under the Indenture;

b. Alternatively, based upon the evidence and arguments of the parties in interest presented in proceedings herein otherwise instructing the Trustee with respect to

the distribution of the Withheld Distributions and future distributions in accordance with the Indenture as so construed by the Court based upon the record;

c. Approving payment from the Trust of any fees and expenses incurred by the Trustee in connection with these proceedings, notwithstanding any limitations on such payment set forth in the Indenture; and

d. Granting the relief sought in the original Petition to the extent not inconsistent herewith together with such other and further relief as the Court may deem lawful, just, and proper.

RESPECTFULLY SUBMITTED, this 5th day of March, 2013

/s/ James F. Killian
Clark T. Whitmore (#181699)
James F. Killian (#193914)
Martin S. Fallon (#030301X)
JoLynn Markison (#0386876)

MASLON EDELMAN BORMAN & BRAND, LLP
90 South 7th Street
Suite 3300
Minneapolis, Minnesota 55402
Clark.Whitmore@maslon.com
James.Killian@maslon.com
Martin.Fallon@maslon.com
JoLynn.Markison@maslon.com
Telephone: (612) 672-8200
Facsimile: (612) 642-8335

**ATTORNEYS FOR U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE**

919154.12